**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| JOSEPH W. CRAVER, III, | |
| Plaintiff, | |
| v. | Case No. 1:15-cv-00421-GBL-MSN |
| LEIDOS HOLDINGS, INC., et al., | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL**
**DISMISSAL OF PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO**
**FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

Jason C. Schwartz, Va. Bar No. 43635
Jason J. Mendro, admitted *pro hac vice*
Martin A. Hewett, admitted *pro hac vice*
Greta B. Williams, admitted *pro hac vice*
Andrea R. Lucas, Va. Bar No. 82357
Michael R. Huston, admitted *pro hac vice*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036
jschwartz@gibsondunn.com
jmendro@gibsondunn.com
mhewett@gibsondunn.com
gbwilliams@gibsondunn.com
alucas@gibsondunn.com
mhuston@gibsondunn.com
Telephone:    202.955.8500
Facsimile:    202.467.0539

*Attorneys for Defendants*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

PROCEDURAL BACKGROUND................................................................................ 3

ALLEGATIONS OF THE AMENDED COMPLAINT.................................................. 6

LEGAL STANDARD............................................................................................... 9

ARGUMENT ........................................................................................................ 10

I.   Plaintiff Has Failed To State A Retaliation Claim (Count IV) Based On Several
     Allegedly Adverse Acts Identified In His Amended Complaint ......................... 10

     A.   Statements By Leidos' Deputy General Counsel During Settlement
          Communications With Plaintiff's Counsel ............................................. 10

     B.   Third-Party Subpoenas During Discovery In This Lawsuit ...................... 13

II.  Plaintiff's Unjust Enrichment Claim (Count V) Fails As A Matter Of Law ...... 16

III. Plaintiff's Claims For Tortious Interference With Contractual Relations (Count VI)
     And "Civil Conspiracy To Terminate [Plaintiff] Based On An Illegal Reason"
     (Count VIII) Fail As A Matter Of Law................................................................... 19

     A.   Plaintiff's Allegations Make Clear That General Jumper And The Leidos
          Board Were Acting Within The Scope Of Their Corporate Duties In
          Connection With Plaintiff's Termination ................................................ 19

     B.   Plaintiff's Claims Are Precluded By The Virginia Human Rights Act ...... 25

IV.  Plaintiff Has Failed To State A Claim For Tortious Interference With "Prospective
     Business Expectancies" (Count VII) ................................................................... 26

CONCLUSION...................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*17th St. Assocs., LLP v. Markel Int'l Ins. Co. Ltd.*,
   373 F. Supp. 2d 584 (E.D. Va. 2005) ................................................................ 27, 28

*Acorn Structures, Inc. v. Swantz*,
   846 F.2d 923 (4th Cir. 1988) .................................................................................. 17

*Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc.*,
   367 F.3d 212 (4th Cir. 2004) .................................................................................. 29

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................. 9

*Baird v. Gotbaum*,
   888 F. Supp. 2d 63 (D.D.C. 2012) .................................................................. 14, 15

*Baloch v. Kempthorne*,
   550 F.3d 1191 (D.C. Cir. 2008) .............................................................................. 11

*Baltimore Scrap Corp. v. David J. Joseph Co.*,
   237 F.3d 394 (4th Cir. 2001) .................................................................................. 16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 554 (2007) ............................................................................................ 9, 21

*Bell v. Shinseki*,
   584 F. App'x 42 (4th Cir. 2014) ............................................................................ 13

*Bickerstaff v. Vassar Coll.*,
   354 F. Supp. 2d 276 (S.D.N.Y. 2004) ................................................................... 11

*Blair v. Defender Servs., Inc.*,
   386 F.3d 623 (4th Cir. 2004) .................................................................................. 20

*Blankenship v. City of Portsmouth*,
   372 F. Supp. 2d 496 (E.D. Va. 2005) .................................................................... 25

*Bowman v. State Bank of Keysville*,
   331 S.E.2d 797 (Va. 1985) ..................................................................................... 25

*Brokaw v. Qualcomm Inc.*,
   122 F. App'x 305 (9th Cir. 2004) ........................................................................... 18

*Brooks v. Arthur*,
   No. 08-00028, 2011 WL 3102791 (W.D. Va. July 26, 2011) ................................ 20

*Bryant v. Bare*,
   192 Va. 238 (1951) ................................................................................................. 23

*Burlington N. & Santa Fe Ry. v. White*,
   548 U.S. 53 (2006) ............................................................................. 10, 11, 12, 14

*Calkins v. Pacel Corp.*,
   No. 07-00025, 2007 WL 2301626 (W.D. Va. Aug. 7, 2007) ...................................... 20, 21, 24

*Cominelli v. Rector & Visitors of the Univ. of Va.*,
   589 F. Supp. 2d 706 (W.D. Va. 2008) .................................................................. 28, 29

*Cutts v. Steelcase, Inc.*,
   No. 05-36, 2006 WL 1722227 (W.D. Mich. June 21, 2006) ................................. 13

*Davis v. George Mason Univ.*,
   395 F. Supp. 2d 331 (E.D. Va. 2005) ...................................................................... 8

*Doss v. Jamco*,
   492 S.E. 2d 441 (Va. 1997) ..................................................................................... 25

*Douglas v. Dabney S. Lancaster Community College*,
   990 F. Supp. 447 (W.D. Va. 1997) .......................................................................... 21

*Duggin v. Adams*,
   360 S.E.2d 832 (1987) ............................................................................................. 19

*Earl v. Norfolk State Univ.*,
   No. 13-148, 2014 WL 2916718 (E.D. Va. June 26, 2014) ...................................... 10

*Ezell v. Dan River, Inc.*,
   No. 02-00017, 2002 WL 32512847 (W.D. Va. Nov. 1, 2002) ................................ 15

*Firestone v. Wiley*,
   485 F. Supp. 2d 694 (E.D. Va. 2007) ...................................................................... 20

*Freeman v. Lasky, Haas & Cohler*,
   410 F.3d 1180 (9th Cir. 2005) ................................................................................. 16

*Gina Chin & Assocs., Inc. v. First Union Bank*,
   537 S.E.2d 573 (Va. 2000) ................................................................................ 20, 22

*Glass v. Glass*,
   321 S.E.2d 69 (Va. 1984) ........................................................................................ 20

*Goodman v. Nat'l Sec. Agency, Inc.*,
   621 F.3d 651 (7th Cir. 2010) ................................................................................... 11

*Gov't Empls. Ins. Co. v. Google, Inc.*,
   330 F. Supp. 2d 700 (E.D. Va. 2004) ................................................................ 27, 28

*GTSI Corp. v. Wildflower Int'l, Inc.*,
   No. 09-123, 2009 WL 2160451 (E.D. Va. July 17, 2009).................................... 28

*Guajacq v. EDF, Inc.*,
   601 F.3d 565 (D.C. Cir. 2010)................................................................................. 12

*Gutierrez de Martinez v. Drug Enforcement Admin.*,
   111 F.3d 1148 (4th Cir. 1997) ................................................................................. 20

*Haigh v. Matsushita Electric Corporation of* America,
   676 F. Supp. 1332 (E.D. Va. 1987) ............................................................. 22, 23, 24

*Hiers v. Cave Hill Corp.*,
   No. 99-117788, 2000 WL 145359 (Va. Cir. Ct. 2000)..........................24

*IGEN Int'l, Inc. v. Roche Diagnostics GmbH*,
   335 F.3d 303 (4th Cir. 2003) ...............................................15, 16, 29

*Jacobs v. N.C. Admin. Office of the Courts*,
   -- F.3d --, 2015 WL 1062673 (4th Cir. Mar. 12, 2015) ......................10

*Jones v. Bank of Am. Corp.*,
   No. 09-162, 2010 WL 6605789 (E.D. Va. Aug. 24, 2010) ....................17

*Jones v. HCA*,
   16 F. Supp. 3d 622 (E.D. Va. 2014) ....................................10, 13

*Jones v. Sternheimer*,
   387 F. App'x 366 (4th Cir. July 6, 2010) .................................26

*Lane Construction Co. v. Brown & Root, Inc.*,
   29 F. Supp. 2d 707 (E.D. Va. 1998) .......................................17

*Leverton v. AlliedSignal, Inc.*,
   991 F. Supp. 486 (E.D. Va. 1998) .........................................19

*Lewis-Gale Med. Ctr., LLC v. Alldredge*,
   710 S.E.2d 716 (Va. 2011) ................................................19

*Lockhart v. Commonwealth Educ. Sys. Corp.*,
   439 S.E.2d 328 (Va. 1994) ................................................25

*Locus v. Fayetteville State Univ.*,
   870 F.2d 655 (4th Cir. Mar. 8, 1989).....................................24

*Mamman v. Chao*,
   No. 06-2688, 2011 WL 1807521 (D.N.J. May 12, 2011)......................15

*Mansfield v. Anesthesia Assocs., Ltd.*,
   No. 07-941, 2008 WL 3539807 (E.D. Va. Aug. 8, 2008) ....................20

*McCarthy v. Texas Instruments, Inc.*,
   999 F. Supp. 823 (E.D. Va. 1998) ........................................25

*McGruder v. Epilepsy Found. of Am., Inc.*,
   No. 11-02310, 2012 WL 832800 (D. Md. Mar. 9, 2012) ......................8

*McKenzie v. Illinois Dept. of Transp.*,
   92 F.3d 473 (7th Cir. 1996) .............................................15

*Meade v. Johnson Mem'l Hosp.*,
   No. 10-24, 2010 WL 3463639 (W.D. Va. Sept. 2, 2010).....................21

*Microstrategy, Inc. v. Netsolve, Inc.*,
   368 F. Supp. 2d 533 (E.D. Va. 2005) .....................................17

*Myers v. Lee*,
   No. 10-131, 2010 WL 2757115 (E.D. Va. July 12, 2010)....................18

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
  591 F.3d 250 (4th Cir. 2009) ........................................................................... 9, 29

*Nieman v. Grange Mut. Ins. Co.*,
  No. 12-3250, 2013 WL 173466 (C.D. Ill. Jan. 16, 2013) ...................................... 15

*Oksanen v. Page Mem'l Hosp.*,
  945 F.2d 696 (4th Cir. 1991) ............................................................................ 24

*Painter's Mill Grille, LLC v. Brown*,
  716 F.3d 342 (4th Cir. 2013) ............................................................................ 24

*Pilar Servs., Inc. v. NCI Information Sys., Inc.*,
  569 F. Supp. 2d 563 (E.D. Va. 2008) ................................................................. 18

*Probst v. Reno*,
  No. 99-3897, 2000 WL 1372872 (N.D. Ill. Sept. 22, 2000)................................... 15

*Prueter v. Agee Realty Corp.*,
  No. 10-14404, 2011 WL 1344587 (E.D. Mich. Apr. 8, 2011) ............................... 18

*Putz v. United States*,
  No. 305-00032, 2006 WL 840320 (W.D. Va. Mar. 29, 2006) ............................... 22

*Rivera v. Prince William Cnty. Sch. Bd.*,
  No. 09-341, 2009 WL 2232746 (E.D. Va. July 22, 2009)..................................... 11

*Robinson v. Dean Foods Co.*,
  No. 08-01186, 2009 WL 2382764 (D. Colo. July 30, 2009)............................. 14, 15

*SecureInfo Corp. v. Telos Corp.*,
  387 F. Supp. 2d 593 (E.D. Va. 2005) ................................................................. 21

*Sherman v. Litton Loan Servicing, L.P.*,
  796 F. Supp. 2d 753 (E.D. Va. 2011) ................................................................. 17

*Shirvinski v. U.S. Coast Guard*,
  No. 09-896, 2010 WL 4279254 (E.D. Va. Oct. 25, 2010).......................... 27, 28, 29

*Skillstorm, Inc. v. Elec. Data Sys., LLC*,
  666 F. Supp. 2d 610 (E.D. Va. 2009) ................................................................. 29

*Sparks v. Duncan Race Cars, Inc.*,
  No. 14-00447, 2014 WL 7403382 (D. Colo. Dec. 29, 2014) ................................ 14

*Steffes v. Stepan Co.*,
  144 F.3d 1070 (7th Cir. 1998) .......................................................................... 15

*Stephens v. Kay Mgmt. Co.*,
  907 F. Supp. 169 (E.D. Va. 1995) ................................................................. 24, 26

*Storey v. Patient First Corp.*,
  207 F. Supp. 2d 431 (E.D. Va. 2002) ................................................................. 23

*Stronach v. Va. State Univ.*,
  631 F. Supp. 2d 743 (E.D. Va. 2008) ................................................................. 21

*Swann v. Office of the Architect of the Capitol*,
   No. 12-01320, 2014 WL 5823450 (D.D.C. Nov. 10, 2014) ................................................... 13

*Taylor v. CNA Corp.*,
   782 F. Supp. 2d 182 (E.D. Va. 2010) ................................................................ 27

*Titan America, LLC v. Riverton Inv. Corp.*,
   569 S.E.2d 57 (Va. 2002) ................................................................ 29

*Vollette v. Watson*,
   937 F. Supp. 2d 706 (E.D. Va. 2013) ................................................................ 24

*Warner v. Buck Creek Nursery, Inc.*,
   149 F. Supp. 2d 246 (W.D. Va. 2001) ................................................................ 23

*Waugh Chapel S., LLC v. United Food & Commercial Workers Union Local 27*,
   728 F.3d 354 (4th Cir. 2013) ................................................................ 16

*Wells v. United States*,
   No. 7-177, 2006 WL 2987948 (E.D. Va. Oct. 17, 2006) ................................................ 23

*Williams v. Autozone Stores, Inc.*,
   No. 09-255, 2009 WL 3837281 (E.D. Va. Nov. 13, 2009) ................................................ 24

**Statutes**

42 U.S.C. § 12117(a) ................................................................................ 6

42 U.S.C. § 2000e–5(f)(1) ................................................................................ 6

Va. Code § 18.2-460(B) ................................................................................ 29

Va. Code § 51.5-41(A) ................................................................................ 26

Va. Code. § 2.2-3900(B)(1) ................................................................................ 26

Va. Code. § 2.2-3903(D) ................................................................................ 25, 26

**Regulations**

29 C.F.R. § 1601.28(a) ................................................................................ 5

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................ 9

Fed. R. Civ. P. 8(d)(2) ................................................................................ 21

Fed. R. Evid. 408 ................................................................................ 10

**Other Authorities**

Restatement (Second) of Agency § 236 cmt. b (1958) ................................................ 23

**INTRODUCTION**

Plaintiff Joseph Craver, the former President of Defendant Leidos Holdings, Inc.'s ("Leidos" or the "Company") Health and Engineering Sector and one of Leidos' most senior and highly-compensated executives, presided over devastating financial results for his Sector in Leidos' debut quarter as a stand-alone public company.  In that quarter (the third quarter of Leidos' fiscal year 2014),[1] the Sector's revenue decreased $100 million (or 20 percent) and its operating income decreased $76 million (or *165 percent*) as compared to the same quarter the year prior, and the Sector reported an operating *loss* of more than $30 million.  Making matters worse, Leidos had disclosed overall revenue guidance based on financial forecasts that Plaintiff had made about his Sector approximately three months earlier.  After it became clear how far below expectations Plaintiff's Sector had actually performed, Leidos was forced to revise that guidance downward a mere week before the third quarter results were reported, causing Leidos' stock price to plunge by more than 17% in a single day.  Three days later (on December 6, 2013), Defendant John P. Jumper, Leidos' Chairman and then-CEO, informed Plaintiff that his employment would be terminated.

In this lawsuit—which Plaintiff initially filed as a defamation suit in May 2014 in the Fairfax County Circuit Court of the Commonwealth of Virginia—Plaintiff claims that his termination had nothing to do with the disastrous financial performance of his Sector.  Rather, Plaintiff claims that General Jumper—a decorated four-star General who previously served as Chief of Staff of the United States Air Force—and the other eight members of Leidos' Board of Directors "conspired" to terminate his employment after learning that Plaintiff had been

---

[1]  Under Leidos' fiscal year (which runs from February 1 to January 31), the third quarter of fiscal year 2014 ended on November 1, 2013.  Leidos publically reported the quarter's results on December 10, 2013.

diagnosed with Parkinson's disease.  *See, e.g.*, Am. Compl. ¶ 125–129.  In addition to his initial claim for defamation against Leidos and General Jumper (Count I), Plaintiff amended his Complaint on March 20, 2015 to add claims for wrongful termination and retaliation under the Americans with Disabilities Act ("ADA") against Leidos (Counts III and IV), as well as several (largely duplicative) state law claims against Leidos, General Jumper, and/or Leidos' Board Members (Counts V through VIII).  Defendants removed this action pursuant to 28 U.S.C. § 1441(a) after Plaintiff's Amended Complaint was filed.

The facts adduced through the extensive discovery taken during the state court proceedings establish that the central allegations underlying Plaintiff's defamation, wrongful termination, and retaliation (based on defamation) claims are wholly without merit, and Defendants anticipate moving for summary judgment on those claims in the near future.  In this motion, however, Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) of the duplicative state law claims in Plaintiff's Amended Complaint—and certain aspects of the retaliation claim—that fail to state a claim as a matter of law.

*First*, Plaintiff's retaliation claim against Leidos (Count IV) fails to the extent it is based on (i) alleged "threats" made by Leidos during the course of settlement negotiations with Plaintiff's counsel and (ii) third-party subpoenas issued by Defendants' counsel during this litigation, because none of these allegedly retaliatory acts were "materially adverse" as a matter of law.  Moreover, not only has Plaintiff failed to allege any facts giving rise to a plausible inference that Plaintiff's disability discrimination complaint was the "but for" cause of the subpoenas, this litigation conduct is immune from collateral attack under the First Amendment pursuant to the *Noerr-Pennington* doctrine.

*Second*, Plaintiff's unjust enrichment claim against Leidos (Count V) must be dismissed

because the relief sought—*i.e.*, the value of unvested equity incentive awards that Plaintiff received during his employment with Leidos—is governed by written agreements that unambiguously provide that such unvested awards were forfeited upon Plaintiff's termination.

*Third*, Plaintiff's claim against General Jumper for tortious interference with contractual relations (Count VI)—as well as his claim against Leidos' Board Members for "civil conspiracy to terminate [Plaintiff] based on an illegal reason" (Count VIII)—fail as a matter of law because, as Plaintiff's allegations make clear, these individuals are not "third parties" that could interfere or conspire to interfere with Plaintiff's at-will employment relationship with Leidos.  Moreover, the Virginia Human Rights Act expressly precludes Plaintiff's attempt to use these common law claims—both of which are necessarily in the alternative to Plaintiff's ADA wrongful termination claim against Leidos—to hold these Defendants individually liable for alleged disability discrimination.

*Finally*, Plaintiff's claim against General Jumper for tortious interference with "prospective business expectancies" (Count VII)—which is purportedly based on the statement by General Jumper that underlies Plaintiff's defamation claim, as well as the third-party subpoenas issued by Defendants' counsel—fails for multiple reasons, including because Plaintiff has failed to allege any specific employment opportunity that it was "reasonably certain" he would have realized but for either type of alleged interference.

## PROCEDURAL BACKGROUND

On January 7, 2014, Plaintiff filed a charge for discrimination and retaliation under the Americans with Disabilities Act ("ADA") against Leidos with the Equal Employment Opportunity Commission ("EEOC").  On May 8, 2014, Plaintiff filed a lawsuit in the Fairfax County Circuit Court against General Jumper and Leidos for defamation and intentional infliction of emotional distress.

Plaintiff's defamation claim is based on a March 2014 interview that General Jumper gave to the *Washington Business Journal* concerning Leidos' disappointing financial results in fiscal year 2014 and the recent or upcoming departures of several senior executives in the wake thereof, including Plaintiff and General Jumper himself.  During that interview, General Jumper made the following statement regarding Plaintiff's departure: "Joe's departure was not anticipated; it was a performance issue that had to be addressed."  Dkt. 2-1, 2-2, Am. Compl. Ex. 1 at 2.  Plaintiff claimed that this statement was defamatory because it "portray[ed]" him as "having engaged in egregious [un]ethical or criminal acts."  Am. Compl. ¶ 287.  Plaintiff also asserted that he could establish that this statement was false—a necessary element of any defamation claim—by proving that he was actually terminated because of General Jumper's and the Leidos Board Members' alleged "fear or perception that having Parkinson's would prevent [Plaintiff] from performing his job responsibilities," and that the admittedly poor financial performance of Plaintiff's Sector was a mere "pretext."  Am. Compl. ¶¶ 125, 240.[2]

Consistent with this theory, Plaintiff pursued his defamation claim in state court by litigating the case just like a disability discrimination case.  Plaintiff did this by, among other things, deposing numerous witnesses regarding their knowledge of Parkinson's disease generally and when, if ever, they learned of Plaintiff's diagnosis.  To support his pretext theory, Plaintiff also sought discovery regarding purported "comparators" to Plaintiff over various periods of time at SAIC or Leidos who allegedly had similar "issues pertaining to earnings" or "shortfalls"

---

[2]  On July 11, 2014, the Fairfax County Circuit Court sustained Defendants' demurrer as to Plaintiff's claim for intentional infliction of emotional distress (Count II), but overruled it as to Plaintiff's defamation claim.  Applying the Virginia Supreme Court Rules—which, among other things, prohibit the submission of deposition testimony in support of a motion for summary judgment—the Court denied Defendants' motion for summary judgment on Plaintiff's defamation claim on February 23, 2015.

but "were not fired." *See* Am. Compl. ¶¶ 109, 247–48.  During almost a year of proceedings in state court, Plaintiff received an enormous amount of discovery in pursuit of this strategy of proof—and far more than what would have been authorized under this Court's Rules—including (i) more than *25* fact depositions totaling more than *110 hours* of testimony, including the depositions of General Jumper, Leidos' entire Board of Directors, and virtually all of its senior executive officers (including its new CEO, Chief Financial Officer, former Chief Operating Officer, and Chief Human Resources Officer);[3] (ii) the production of nearly *100,000* pages of documents (in response to ten rounds of document requests comprising a total of more than 200 individual requests); and (iii) responses to more than *2,000* requests for admission and 23 interrogatories.

Although Plaintiff had the right to request a "right to sue" notice from the EEOC authorizing him to file his ADA claims as of July 2014, *see* 29 C.F.R. § 1601.28(a)—*i.e.*, approximately seven months before trial was scheduled to commence in the Fairfax County Circuit Court case (on March 9, 2015)—he deliberately declined to do so.  Instead, Plaintiff advised Defendants that he planned to wait and file a new—and factually duplicative—action for discrimination and retaliation after the conclusion of the Fairfax County Circuit Court case. However, that strategy was upended by two events—(i) on January 12, 2015, the EEOC dismissed Plaintiff's charge and issued a right to sue notice, requiring Plaintiff to file his federal

---

[3] In addition to these current and former executives, Plaintiff has also deposed the acting President of HES; the President of Leidos' National Security Sector; Leidos' former Chief Strategy Officer; the former Chief Human Capital Officer of SAIC; the Chief Human Resources Officer for HES; the Chief Financial Officer for HES; the former President of the Health Group within HES; the current President of the Engineering Group within HES; the former Senior Vice President of Strategic Transactions at SAIC; SAIC's former Senior Vice President of Corporate Development; and a current SAIC Board Member.  Plaintiff also attempted to depose Leidos' General Counsel on two occasions during discovery, but the Court quashed those deposition notices both times (the second time with prejudice).

claims no later than 90 days later or else forfeit them, *see* 42 U.S.C. §§ 12117(a), 2000e–5(f)(1));
and (ii) on February 23, 2015, the Circuit Court issued an order continuing trial to July 6, 2015
(approximately three months after Plaintiff's right to sue notice was set to expire).

On March 6, 2015, Plaintiff moved for leave to amend his Complaint in light of "the
issuance of the [r]ight to [s]ue [notice]" and to "reflect the evidence and legal claims he believes
are now ripe based on discovery." Dkt. 2, Ex. D-134 (Pl.'s Mot. to File Am. Compl.) at 2–3.
Defendants did not oppose Plaintiff's motion to amend, but reserved their rights, defenses, and
objections thereto. Plaintiff's Amended Complaint—which contains more than 400 paragraphs
and spans nearly 100 pages—was deemed filed on March 20, 2015, and Defendants removed the
action to this Court on March 30, 2015. *See* Dkt. 2-3 (Mar. 20, 2015 Order); Dkt. 1.

## ALLEGATIONS OF THE AMENDED COMPLAINT

Leidos was known as Science Applications International Corporation ("SAIC") until
September 2013, when the Company changed its name and spun off certain businesses under the
former corporate name. *See* Am. Compl. ¶ 51. Leidos is a publicly-traded applied technology
company headquartered in Reston, Virginia that provides solutions and services using data
analytics, systems integration, and cyber-security across three markets: national security, health,
and engineering. *See, e.g.*, *id.* ¶¶ 8–9. Leidos has two primary business divisions: the Health
and Engineering Sector ("HES") and the National Security Sector ("NSS"). *See id.* ¶ 53.
Plaintiff was employed by SAIC/Leidos for almost twenty-five years, ultimately serving as the
President of HES. *See id.* ¶¶ 44, 52–53.

Plaintiff acknowledges that Leidos' financial performance in its opening quarter as a new
company was "disappointing," and that HES "was part . . . of the shortfall." *See id.* ¶¶ 57–58.
He claims, however, that the Sector's disappointing financial performance was due to a wide
variety of factors "*most* of which were outside of his control," including federal budget

sequestration, the delay in implementation of certain aspects of the Affordable Care Act, and bad debt charges on certain energy construction projects. *Id.* ¶ 59 (emphasis added). Plaintiff alleges that immediately following a Board of Directors meeting on December 6, 2013—*i.e.*, three days after Leidos was forced to revise its revenue guidance downward—General Jumper informed Plaintiff that his employment would be terminated because "the Board had decided that a change in leadership for [HES] was needed, effective immediately." *Id.* ¶¶ 85.

Plaintiff asserts that his termination could not possibly have been based on HES's financial performance in the third quarter because HES had been "impacted by . . . circumstances that similarly affected the entire Leidos organization and others in similar fields" and he had "kept [General Jumper] contemporaneously informed" of "all aspects of [HES's] performance." *Id.* ¶¶ 154, 410; *see also id.* ¶ 154 (alleging that HES's financial performance "was not a legitimate business justification for [Plaintiff's] termination"). Rather, Plaintiff claims that the "true reason" for his termination was his disclosure of his Parkinson's disease to General Jumper (and two other Board members) in the months and days shortly before Leidos' third quarter results were reported, and General Jumper's and the Leidos Board Members' "unfounded fear or perception that having Parkinson's would prevent [Plaintiff] from . . . continuing effectively in his position." *See, e.g., id.* ¶¶ 63, 70–72, 125. Plaintiff alleges that because of these fears, General Jumper and Leidos' entire Board of Directors "conspired . . . to terminate [Plaintiff] . . . based on his disability," and to "cover up the true basis for [the] terminat[ion]." *Id.* ¶ 384.

On December 18, 2013, Leidos' Chief Human Resources Officer sent an inter-office memorandum to Plaintiff (i) informing him that January 31, 2014 would be his last day of employment and (ii) attaching an agreement reflecting the severance package the Company was prepared to offer to Plaintiff. *See* Am. Compl. ¶ 276. On December 19, counsel for Plaintiff,

Elaine Bredehoft, sent an email (entitled "Confidential Settlement Communications") to Leidos' General Counsel in which she (1) alleged that there was "overwhelming" evidence that Plaintiff was terminated because of his Parkinson's diagnosis; (2) threatened to bring a "discrimination claim, along with attendant torts" against Leidos before the EEOC and in court; and (3) emphasized the purported "significant exposure and liability" that Leidos faced.   Schwartz Decl. Ex. 1 at 1–3; Am. Compl. ¶ 277.[4]   Ms. Bredehoft attached to her email a proposed settlement agreement that would have entitled Plaintiff to remain employed at Leidos another seventeen months as a "consultant," during which time (i) Plaintiff would continue to receive his full salary and (ii) certain previously-awarded equity incentive awards (such as stock options) would continue to vest.   Schwartz Decl. Ex. 1 at 4; Am. Compl. ¶ 277.

On December 23, 2013, Leidos' Deputy General Counsel responded to Ms. Bredehoft's email and (i) strongly denied Plaintiff's allegation and (ii) rejected Plaintiff's settlement demand. Schwartz Decl. Ex. 2 at 1; Am. Compl. ¶ 278.   He also stated that if Plaintiff chose to reject the Company's offer and proceed to litigation, he would be "jeopardizing both his continuing salary and the opportunity to vest in additional restricted equity awards."   *Id.*   He concluded the email by stating: "The Company is fully prepared to defend its position publicly.  We hope that Joe reconsiders his misguided strategy to threaten Leidos with empty threats of baseless litigation." Schwartz Decl. Ex. 2 at 1; Am. Compl. ¶ 280.

---

[4]  "Schwartz Decl." refers to the concurrently-filed declaration of Jason C. Schwartz in support of Defendants' motion.   Because each of the documents discussed in this section are incorporated by reference in Plaintiff's Amended Complaint and are integral to his purported retaliation claim (*see infra* at 10-13), the Court may consider them in ruling on Defendants' motion to dismiss under Rule 12(b)(6) without converting it to a motion for summary judgment.  *See, e.g.*, *McGruder v. Epilepsy Found. of Am., Inc.*, No. 11-02310, 2012 WL 832800, at *4 n.4 (D. Md. Mar. 9, 2012); *see also Davis v. George Mason Univ.*, 395 F. Supp. 2d 331, 334–35 (E.D. Va. 2005).

In a responsive email on December 26, 2013, Ms. Bredehoft claimed that Leidos was attempting to "revoke[]" its prior position that Plaintiff's last day of employment would be January 31, 2014, which she alleged constituted "illegal" retaliation. Schwartz Decl. Ex. 3 at 1; Am. Compl. ¶¶ 278, 282. In his responsive email the very next day, Leidos' Deputy General Counsel explained that Ms. Bredehoft had apparently "misread[]" his email, and clarified that Plaintiff's last day of employment would be January 31, 2014 "regardless of whether he sign[ed]" the severance agreement proposed by the Company. Schwartz Decl. Ex. 4 at 1; Am. Compl. ¶ 282. Though the parties were unable to reach any settlement—which, according to Plaintiff, was the result of Leidos' "refusal to negotiate or mediate"—Plaintiff's termination became effective on January 31, and Plaintiff "received the stock that vested on [that date]." Am. Compl. ¶¶ 137–38.

## LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court must dismiss a complaint that fails to state a claim upon which relief can be granted. A complaint fails to state a claim if the plaintiff does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253, 255–56 (4th Cir. 2009). Accordingly, a plaintiff must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court must accept "well-pled facts" as true, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes," and the Court will not presume those to be true. *Nemet*, 591 F.3d at 255. Likewise, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.* at 253.

9

## ARGUMENT

**I.    Plaintiff Has Failed To State A Retaliation Claim (Count IV) Based On Several Allegedly Adverse Acts Identified In His Amended Complaint**

To state a retaliation claim under the ADA, a plaintiff must plead "(i) that [he] engaged in protected activity and, (ii) because of this, (iii) [his] employer took an adverse employment action against [him]." *Jacobs v. N.C. Admin. Office of the Courts*, -- F.3d --, 2015 WL 1062673, at *13 (4th Cir. Mar. 12, 2015).   An adverse employment action occurs when "a reasonable employee would have found the challenged action materially adverse," meaning the action is one that would "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (addressing retaliation claims under Title VII); *see also Jones v. HCA*, 16 F. Supp. 3d 622, 635 (E.D. Va. 2014) (noting that "[t]he elements of an ADA retaliation claim mirror the elements of [a] Title VII retaliation claim").

### A.    Statements By Leidos' Deputy General Counsel During Settlement Communications With Plaintiff's Counsel

Plaintiff asserts that Leidos unlawfully retaliated against him when, during the course of inadmissible settlement negotiations, *see* Fed. R. Evid. 408, Leidos' Deputy General Counsel allegedly threatened to (i) "revoke" Plaintiff's scheduled last day of employment and (ii) "defame" him in the future unless Plaintiff accepted the severance agreement that Leidos had previously proposed.  *See* Am. Compl. ¶¶ 278-81; *see also supra* at 8–9.  Because these alleged "threats" do not constitute materially adverse actions as a matter of law, Plaintiff's retaliation claim must be dismissed to the extent it is based on them.  *See, e.g.*, *Earl v. Norfolk State Univ.*, No. 13-148, 2014 WL 2916718, at *24–25 (E.D. Va. June 26, 2014) (dismissing retaliation claim under Rule 12(b)(6) because the alleged retaliatory acts were not materially adverse as a matter of law); *Rivera v. Prince William Cnty. Sch. Bd.*, No. 09-341, 2009 WL 2232746, at *7–8 (E.D.

Va. July 22, 2009) (same).

*First*, Plaintiff's claim that he experienced retaliation when Leidos allegedly threatened to "revoke" his effective termination date fails as a matter of law because Plaintiff has not alleged that he suffered any "injury or harm" as a result of that alleged "threat." *Burlington N.*, 548 U.S. at 67 ("The anti-retaliation provision protects an individual not from all retaliation, but from *retaliation that produces injury or harm*.") (emphasis added).   As Plaintiff concedes in his Amended Complaint, (i) Leidos did *not* change the effective date of Plaintiff's termination (and it made clear that it had never intended to do so *less than 24 hours after* Ms. Bredehoft raised the retaliation allegation); and (ii) Plaintiff remained employed by Leidos through January 31, 2014, during which time he continued to receive full salary and benefits and his equity awards continued to vest as scheduled.  *See supra* at 9.  Accordingly, Plaintiff's retaliation claim should be dismissed to the extent it is based on this alleged "threat."[5]  *See, e.g., Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 656 (7th Cir. 2010) ("It is well established that unfulfilled threats that result in no material harm cannot be considered an adverse employment action . . . ."); *Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008) (holding that "proposed" suspensions of plaintiff's employment that were never imposed "had no actual effects" and were not materially adverse).

*Second*, Plaintiff's retaliation claim based on Leidos' alleged "threat to defame" him also

---

[5]  Although Plaintiff acknowledges that he remained employed by Leidos through January 31, 2014, he nonetheless complains that Leidos "refused to negotiate or mediate" before Plaintiff forfeited the equity awards that would not have vested as of that date.  Am. Compl. ¶ 282. Though it is unclear from the Amended Complaint whether Plaintiff claims that this constituted a separate act of retaliation, any such claim would be meritless.  *See, e.g., Bickerstaff v. Vassar Coll.*, 354 F. Supp. 2d 276, 281 (S.D.N.Y. 2004) (holding that the defendants' "alleged refusal to mediate the [p]laintiff's [discrimination] claim" did not constitute an adverse action that could support a retaliation claim).

fails.   That theory is based on the first sentence of the following portion of Leidos' Deputy General Counsel's December 23, 2013 email to Ms. Bredehoft:  "The Company is fully prepared to defend its position publicly.  We hope that Joe reconsiders his misguided strategy to threaten Leidos with empty threats of baseless litigation."  *See Schwartz Decl. Ex. 2 at 1.*  Plaintiff alleges that this sentence constituted "a thinly veiled threat that Leidos would *attempt to defame* [Plaintiff] if he did not . . . withdraw his claims that Leidos had terminated [Plaintiff] because of his Parkinson's diagnosis."  Am. Compl. ¶ 280 (emphasis added).

As the Supreme Court made clear in *Burlington Northern*, however, courts must apply an objective standard to determine whether an action is materially adverse.  548 U.S. at 68–69.  In applying that standard, "[c]ontext matters."  *Id.* at 69; *see also Guajacq v. EDF, Inc.*, 601 F.3d 565, 578 (D.C. Cir. 2010) ("A statement that literally appears to be threatening is not necessarily a materially adverse action.   An employer's words and other actions must be considered in context . . . .").   Both on its face and in context, the *only* reasonable interpretation of the statement that the Company was "fully prepared to *defend* its *position* publicly"—*i.e.*, its position that, contrary to Plaintiff's allegation, he was *not* terminated on account of his Parkinson's disease—is that Leidos was prepared to "publicly" defend against the *lawsuit Plaintiff was threatening*.  Indeed, that is precisely how *Ms. Bredehoft* interpreted that statement in her response email the next day, in which she characterized that statement as a "threat[]" to "terminate [Plaintiff] . . . and *battle this in the EEOC and the Courts*."  *See* Schwartz Decl. Ex. 3 at 3 (emphasis added).  Ms. Bredehoft claimed that Leidos' alleged "revocation" of Plaintiff's effective separation date constituted retaliation in this same email, but notably did not raise any such allegation with respect to the Deputy General Counsel's statement that the Company was "fully prepared to defend itself publicly."  *See* Schwartz Decl. Ex. 3 at 1-3; Am. Compl. ¶ 282.

12

As a matter of law, there is nothing retaliatory about a stated intent to defend oneself in court, and this theory of retaliation is therefore meritless. *See, e.g.*, *Cutts v. Steelcase, Inc.*, No. 05-36, 2006 WL 1722227, at *15 (W.D. Mich. June 21, 2006) (holding that employer's alleged statement that it "would vigorously defend against any civil rights complaint was not a threat of retaliation"); *see also Swann v. Office of the Architect of the Capitol*, No. 12-01320, 2014 WL 5823450, at *5 (D.D.C. Nov. 10, 2014) (dismissing retaliation claim based on an alleged statement that could not "plausibly be characterized as a 'threat,' let alone one that . . . would have discouraged a reasonable employee from engaging in protected activity").

### B.      Third-Party Subpoenas During Discovery In This Lawsuit

In October 2014, Defendants issued subpoenas to certain companies and recruiters with and through whom, respectively, Plaintiff had applied for employment after his termination for job application records and "notes generated by . . . personnel [from these entities] pertaining to" Plaintiff's candidacy. *See* Am. Compl. ¶¶ 284–85. Plaintiff alleges that Defendants—through their undersigned counsel—issued these subpoenas to "retaliate against and harm [Plaintiff] and to punish him for his complaints" of disability discrimination. *Id.* ¶ 163; *see also, e.g.*, *id.* ¶¶ 165, 288. Plaintiff's retaliation claim based on these subpoenas fails for numerous reasons.

*First*, aside from these conclusory assertions, Plaintiff has failed to plead *any* factual allegations that plausibly suggest that Defendants issued these subpoenas to retaliate against him for raising his disability discrimination complaint ten months earlier, let alone that Plaintiff's disability discrimination complaint was the "but for" cause of Defendants' issuing the subpoenas. *See Bell v. Shinseki*, 584 F. App'x 42, 44 (4th Cir. 2014); *see also Jones*, 16 F. Supp. 3d at 634–36 (dismissing ADA and Title VII retaliation claims where the plaintiff failed to plausibly allege that the filing of his EEOC charge was the "but for" cause of his termination eight months later). Indeed, Plaintiff's allegations give rise to the opposite inference: that the

subpoenas were issued to obtain relevant information concerning Plaintiff's defamation claim. Plaintiff alleges that General Jumper's allegedly defamatory statement "portray[ed]" him as "having engaged in egregious [un]ethical or criminal acts," and thereby "ma[de] it *impossible* for [Plaintiff] to obtain employment" in the future.  Am. Compl. ¶¶ 159, 287 (emphasis added).  In order for Plaintiff's allegation to be true—and for Plaintiff to be entitled to any damages, much less the tens of millions of dollars in compensatory damages he seeks on this claim—such potential employers would have to have *seen and read* the article and have drawn the inference that Plaintiff espouses.   As such, Defendants' requests for application records and "notes generated by . . . personnel pertaining to" those applications sought plainly relevant information and thus do not give rise to a plausible inference of retaliatory motive.  *See id.* ¶¶ 163, 285.

*Second*, the issuance of third-party subpoenas does not constitute a materially adverse action as a matter of law.   "Any reasonable employee-plaintiff who files an employment discrimination suit necessarily must expect and be prepared to defend his or her claims against denials, defenses, and affirmative defenses asserted by the defendant-employer," *Robinson v. Dean Foods Co.*, No. 08-01186, 2009 WL 2382764, at *4 (D. Colo. July 30, 2009), including "third-party discovery relating to the claims at issue," *Sparks v. Duncan Race Cars, Inc.*, No. 14-00447, 2014 WL 7403382, at *5–6, 9–10 (D. Colo. Dec. 29, 2014).   Accordingly, numerous courts have held that such "adversarial conduct arising in the course of litigation," *Baird v. Gotbaum*, 888 F. Supp. 2d 63, 74 (D.D.C. 2012) (citing *Burlington N.*, 548 U.S. at 69), does not constitute a materially adverse action for purposes of a retaliation claim because "a plaintiff-employee who is dissuaded from supporting a charge of discrimination" when faced with such conduct "is not *reasonably* dissuaded," *Robinson*, 2009 WL 2382764, at *4 (emphasis added). *See, e.g.*, *Sparks*, 2014 WL 7403382, at *10 (denying leave to amend complaint to add retaliation

claim based on allegedly irrelevant, overbroad, and harassing third-party subpoenas issued in the same litigation); *Steffes v. Stepan Co.*, 144 F.3d 1070, 1076 (7th Cir. 1998) (dismissing retaliation claim based on defendant's contact with, and disclosure of plaintiff's discrimination charges to, plaintiff's new employer during the discovery process).[6]  As in this case, a defendant's discovery conduct—even conduct that allegedly "'attempt[s] to obstruct the litigation of the underlying discrimination complaint, like oppressive discovery requests'"—"'is inseparable from the litigation of the claim'" and, "'[a]ccordingly, . . . is a matter to be resolved pursuant to court rules' . . . not in a separate action for retaliation." *Ezell*, 2002 WL 32512847, at *3 (quoting *McKenzie v. Illinois Dept. of Transp.,* 92 F.3d 473, 486 (7th Cir. 1996)); *Steffes*, 144 F.3d at 1077 (defendants "must have some leeway to investigate possible defenses without undue fear of being subjected to additional liability in retaliation suits").

*Third*, Plaintiff's retaliation claim based on those subpoenas is barred by the *Noerr-Pennington* doctrine, which safeguards "protected First Amendment petitioning activity from collateral attack." *IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 310 (4th Cir. 2003).  The *Noerr-Pennington* doctrine's protection of petitioning activity extends to activities taken in the "pursuit of litigation," *id.*, including litigation conduct incidental to the prosecution

---

[6]  *See also Robinson*, 2009 WL 2382764, at *4–5 (dismissing retaliation claim based on counterclaim filed by the defendant-employer in the same litigation); *Ezell v. Dan River, Inc.*, No. 02-00017, 2002 WL 32512847, at *3 (W.D. Va. Nov. 1, 2002), *aff'd*, 61 F. App'x 98 (4th Cir. 2003) (per curiam) (dismissing retaliation claim based on alleged perjury); *Nieman v. Grange Mut. Ins. Co.*, No. 12-3250, 2013 WL 173466, at *3 (C.D. Ill. Jan. 16, 2013), *appeal dismissed* (Mar. 4, 2013) (dismissing retaliation claim based on discovery objections, settlement offer, motion for sanctions, and counterclaims); *Baird*, 888 F. Supp. 2d at 74 (dismissing retaliation claim based on deposition conduct and motion for sanctions); *Mamman v. Chao*, No. 06-2688, 2011 WL 1807521, at *6–7 (D.N.J. May 12, 2011) (dismissing retaliation claim based on alleged perjury); *Probst v. Reno*, No. 99-3897, 2000 WL 1372872, at *10 (N.D. Ill. Sept. 22, 2000), *aff'd sub nom. Probst v. Ashcroft*, 25 F. App'x 469, 471–72 (7th Cir. 2001) (dismissing retaliation claim based on motion to seal).

or defense of a lawsuit, such as discovery.[7]  *See, e.g.*, *Baltimore Scrap Corp. v. David J. Joseph Co.*, 237 F.3d 394, 401 (4th Cir. 2001); *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1185 (9th Cir. 2005) (*Noerr-Pennington* protection extends to discovery conduct because "[d]iscovery . . . is 'conduct incidental to' a petition—in this case, incidental to the [defendants'] defense against [plaintiff's] lawsuit").  Because Defendants have a First Amendment right to engage in such conduct, the *Noerr-Pennington* doctrine bars Plaintiff's attempt to hold them liable for any damages caused by the subpoenas, including through a retaliation claim.  *See, e.g.*, *Freeman*, 410 F.3d at 1186 (affirming dismissal of claims based on alleged discovery misconduct in prior action under the *Noerr-Pennington* doctrine); *see also Baltimore Scrap*, 237 F.3d at 399 (affirming dismissal of claims based on the funding and filing of a prior lawsuit under the *Noerr-Pennington* doctrine).

## II.    Plaintiff's Unjust Enrichment Claim (Count V) Fails As A Matter Of Law

Through his unjust enrichment claim, Plaintiff seeks to recover the value of equity incentive awards—*i.e.*, "restricted stock units, unvested stock, and stock options"—that Plaintiff received during the course of his employment but which had not yet vested as of the date of his termination.  *See* Am. Compl. ¶ 295.  According to Plaintiff, because these equity incentive awards were "based on [Plaintiff] successfully achieving financial goals and milestones," they "*should* have fully vested" when he was terminated.  *Id.* ¶¶ 296, 302 (emphasis added).  Plaintiff's Amended Complaint focuses in particular on an equity incentive award he received in connection with Leidos' separation from SAIC and claims that Defendants wrongfully "failed to

---

[7]  The applicability of the *Noerr-Pennington* doctrine is a question of law for the court to resolve, *IGEN*, 335 F.3d at 310, and may be resolved on a motion to dismiss where, as here, "all facts necessary to the affirmative defense clearly appear on the face of the complaint." *Waugh Chapel S., LLC v. United Food & Commercial Workers Union Local 27*, 728 F.3d 354, 360 (4th Cir. 2013).

allow [the award] to vest" at the time of his termination.  *Id.* ¶¶ 304, 312–14.

Plaintiff's unjust enrichment claim fails as a matter of law.  "Under Virginia law, the elements of unjust enrichment are (1) the plaintiff's conferring of a benefit on the defendant, (2) the defendant's knowledge of the conferring of the benefit, and (3) the defendant's acceptance or retention of the benefit under circumstances that render it inequitable for the defendant to retain the benefit without paying for its value."  *Microstrategy, Inc. v. Netsolve, Inc.*, 368 F. Supp. 2d 533, 537 (E.D. Va. 2005) (internal quotation marks and citation omitted).  However, "[i]t is a well-settled principle under Virginia law that unjust enrichment claims arise only where there is no express contract."  *Lane Construction Co. v. Brown & Root, Inc.*, 29 F. Supp. 2d 707, 727 (E.D. Va. 1998); *see also, e.g.*, *Acorn Structures, Inc. v. Swantz*, 846 F.2d 923, 926 (4th Cir. 1988).  As Plaintiff admits, the equity incentive awards that he received are governed by written agreements that specify (i) the dates on which they will vest (in whole or in part), and (ii) the circumstances under which they will be forfeited.[8]  Specifically, these agreements[9] provide that (i) by accepting the awards, Plaintiff voluntarily agreed to all of the terms and conditions set forth in the agreements and the Company's Equity Incentive Plan (the "Plan"); (ii) any restricted stock units, performance shares, or stock options that had not vested as of Plaintiff's separation from the Company would be forfeited; and (iii) nothing in the agreements or the Plan "deprive[d]

---

[8]  *See, e.g.*, Am. Compl. ¶ 138 (acknowledging that Plaintiff's termination "resulted in the loss of [Plaintiff's] remaining and unvested stock and stock options"); *id.* ¶ 282 (alleging that Plaintiff's unvested "stock and stock options were cancelled" by virtue of Plaintiff's separation from the company); *id.* ¶ 304 (alleging that a performance award that Plaintiff received was subject to "cliff vesting"); *id.* ¶ 308 (alleging that Plaintiff received a performance award through an "agreement . . . ratified by the Board of Directors").

[9]  The Court is entitled to consider these agreements in ruling on Defendants' motion to dismiss Plaintiff's unjust enrichment claim under Rule 12(b)(6).  *See, e.g.*, *Sherman v. Litton Loan Servicing, L.P.*, 796 F. Supp. 2d 753, 755 n.1 (E.D. Va. 2011) (dismissing unjust enrichment claim based on agreement attached to the defendant's motion to dismiss); *Jones v. Bank of Am. Corp.*, No. 09-162, 2010 WL 6605789, at *3 (E.D. Va. Aug. 24, 2010) (same).

the Company of the right to terminate [Plaintiff] at will and without regard to any future vesting opportunity that [Plaintiff] may have." *See, e.g.*, Reiter Decl. ¶ 14, Ex. 5, Agmt for March 2012 RSU Award ¶¶ 3(c), 9(a).[10]

Accordingly, not only are the equity incentive awards that Plaintiff received governed by written agreements, Plaintiff is plainly *not* entitled under those agreements to the relief he seeks through his unjust enrichment claim.[11]  Plaintiff's unjust enrichment claim therefore fails as a matter of law and must be dismissed. *See, e.g.*, *Myers v. Lee*, No. 10-131, 2010 WL 2757115, at *6 (E.D. Va. July 12, 2010) (dismissing unjust enrichment claim where there was an express agreement concerning the plaintiff's employment); *Pilar Servs., Inc. v. NCI Information Sys., Inc.*, 569 F. Supp. 2d 563, 569 (E.D. Va. 2008) (dismissing unjust enrichment claim where there was a contract governing the dispute).

---

[10]  *See* Reiter Decl. ¶ 10, Ex. 1, Agmt for April 2009 Option Award ¶¶ 4.1, 5.1, 9; Reiter Decl. ¶ 11, Ex. 2, Agmt for April 2010 Option Award ¶¶ 4.1, 5.1, 10; Reiter Decl. ¶ 12, Ex. 3, Agmt for April 2011 Option Award ¶¶ 4.1, 5.1, 10; Reiter Decl. ¶ 13, Ex. 4, Agmt for March 2012 Option Award ¶¶ 4.1, 5.1, 10; Reiter Decl. ¶ 14, Ex. 5, Agmt for March 2012 RSU Award ¶¶ 3(c), 9(a); Reiter Decl. ¶ 15, Ex. 6, Agmt for April 2013 Option Award ¶¶ 4.1, 5.1, 10; Reiter Decl. ¶ 16, Ex. 7, Agmt for First April 2013 RSU Award ¶¶ 3(c), 9(a); Reiter Decl. ¶ 17, Ex. 8, Agmt for Second April 2013 RSU Award ¶¶ 3(c), 9(a); Reiter Decl. ¶ 18, Ex. 9, Agmt for September 2013 RSU – Converted Performance Share Award ¶¶ 2, 9; Reiter Decl. ¶ 19, Ex. 10, Agmt for October 2013 Option Award ¶¶ 4.1, 5.1, 10; Reiter Decl. ¶ 20, Ex. 11, Agmt for October 2013 RSU Award ¶¶ 3(c), 8(a). ("Reiter Decl." refers to the concurrently-filed declaration of George Reiter, Senior Vice President, Director of Total Awards at Leidos.)

[11]  Notably, numerous courts have rejected similar types of unjust enrichment claims based on the value of unvested equity awards that were forfeited upon termination of an executive's employment with the company. *See, e.g.*, *Prueter v. Agee Realty Corp.*, No. 10-14404, 2011 WL 1344587, at *4 (E.D. Mich. Apr. 8, 2011) (rejecting former executive's unjust enrichment claim based on unvested restricted shares that were forfeited as a result of his termination because a restricted stock agreement governed the shares, and "require[d] all unvested restricted shares to be forfeited"); *Brokaw v. Qualcomm Inc.*, 122 F. App'x 305, 306–307 (9th Cir. 2004) (affirming dismissal of unjust enrichment claim by former executive who "lost non-vested stock options upon his termination of employment"—which he alleged constituted unlawful age discrimination—because the options were governed by an agreement).

III.   **Plaintiff's Claims For Tortious Interference With Contractual Relations (Count VI) And "Civil Conspiracy To Terminate [Plaintiff] Based On An Illegal Reason" (Count VIII) Fail As A Matter Of Law**

Plaintiff claims that General Jumper and Leidos' Board Members tortiously interfered with and unlawfully conspired to terminate, respectively, Plaintiff's employment with Leidos by terminating him on account of his Parkinson's diagnosis. *See, e.g.*, Am. Compl. ¶¶ 343, 384. Both claims fail as a matter of law for at least two reasons: (1) Plaintiff's allegations make clear that neither General Jumper nor the Board Members were "third parties" to Plaintiff's at-will employment relationship with Leidos; and (2) these state common law claims—which are essentially claims for wrongful termination based on disability discrimination against General Jumper and the Leidos Board Members in their individual capacities—are precluded by the Virginia Human Rights Act.

A.   **Plaintiff's Allegations Make Clear That General Jumper And The Leidos Board Were Acting Within The Scope Of Their Corporate Duties In Connection With Plaintiff's Termination**

Under Virginia law, a claim for tortious interference with an existing contract requires the plaintiff to plausibly allege that (1) there was a valid contractual relationship between the plaintiff *and a third party*; (2) the defendant knew of that relationship; (3) the defendant intentionally interfered with that relationship; and (4) the plaintiff was damaged as a result of such interference. *Lewis-Gale Med. Ctr., LLC v. Alldredge*, 710 S.E.2d 716, 720 (Va. 2011).[12] Similarly, "the elements of a common law civil conspiracy claim are (i) an agreement between

---

[12]   In addition, where, as here, the contractual relationship at issue is terminable at will, the plaintiff must further allege that the defendant used "improper methods" to interfere with the relationship. *Duggin v. Adams*, 360 S.E.2d 832, 836 (1987); *see also Leverton v. AlliedSignal, Inc.*, 991 F. Supp. 486, 488 n.1 (E.D. Va. 1998) (where a plaintiff fails to allege that he was employed pursuant to contract for a definite period, his employment is presumed to be terminable at-will).

*two or more persons* (ii) to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, which (iii) results in damage to plaintiff." *Firestone v. Wiley*, 485 F. Supp. 2d 694, 703 (E.D. Va. 2007) (emphasis added) (citing *Glass v. Glass*, 321 S.E.2d 69 (Va. 1984)). For purposes of both torts, therefore, a third party is required; and it is well-established under Virginia law that directors, officers, and employees of a corporation acting within the scope of their duties do not qualify as "third parties" who can conspire with each other or tortiously interfere with the corporation's contract. *See, e.g.*, *Mansfield v. Anesthesia Assocs., Ltd.*, No. 07-941, 2008 WL 3539807, at *6 (E.D. Va. Aug. 8, 2008); *Calkins v. Pacel Corp.*, No. 07-00025, 2007 WL 2301626, at *2 (W.D. Va. Aug. 7, 2007).

As the Fourth Circuit has observed, "Virginia courts take a fairly broad view of scope of employment." *Gutierrez de Martinez v. Drug Enforcement Admin.*, 111 F.3d 1148, 1156 (4th Cir. 1997). The test to determine whether a particular act was done within the scope of employment is "whether '*the service itself*, in which the tortious act was done, *was within the ordinary course of the employer's business*.'" *Blair v. Defender Servs., Inc.*, 386 F.3d 623, 627 (4th Cir. 2004) (quoting *Gina Chin & Assocs., Inc. v. First Union Bank*, 537 S.E.2d 573, 579 (Va. 2000)) (emphases added). Because making decisions regarding the employment of a subordinate executive is plainly a "service . . . within the ordinary course of the employer's business," *id.*, General Jumper and the Board Members—*i.e.*, the highest-level decision-makers at Leidos—were necessarily acting within the scope of their corporate duties in connection with the termination of Plaintiff's employment. *See, e.g.*, *Brooks v. Arthur*, No. 08-00028, 2011 WL 3102791, at *15 (W.D. Va. July 26, 2011) (supervisor who issued disciplinary notices against the plaintiffs was acting "within the scope of his employment because he supervised [the plaintiffs] and had the authority to terminate them"), *aff'd*, 685 F.3d 367 (4th Cir. 2012); *Stronach v. Va.*

*State Univ.*, 631 F. Supp. 2d 743, 753 (E.D. Va. 2008) (holding that university's provost and department chair acted "well within their assigned duties as [university] administrators" in terminating the plaintiff's employment); *Calkins*, 2007 WL 2301626, at *2 (dismissing tortious interference claim against company's officers and directors based on the plaintiff's termination, and noting that "[d]irectors and officers are supposed to make decisions regarding employment contracts . . . and then take such actions as are consistent with the outcome of that" decision); *see also Douglas v. Dabney S. Lancaster Community College*, 990 F. Supp. 447, 467 (W.D. Va. 1997) ("A decision by an employer and supervisors involving an employee's work is not the type of 'interference' made actionable under this tort.").

Plaintiff apparently seeks to avoid this conclusion through conclusory assertions that General Jumper and the Leidos Board Members were "acting in [their] own *personal* interests"—and thus purportedly "outside the scope of [their] employment"—in "recommending/terminating" Plaintiff.  Am. Compl. ¶ 348 (emphasis added); *see also id.* ¶¶ 344, 431. But these allegations—which directly conflict with Plaintiff's allegations in support of his other claims[13]—are mere legal conclusions that are insufficient to survive a motion to dismiss. *See Twombly*, 550 U.S. at 555; *Meade v. Johnson Mem'l Hosp.*, No. 10-24, 2010 WL 3463639, at *4–5 (W.D. Va. Sept. 2, 2010).

Moreover, even assuming that a well-pled factual allegation that an employee was acting

---

[13]   *See, e.g.*, Am. Compl. ¶¶ 203, 274 (ADA claims); *id.* ¶ 173 (defamation claim).  Although a plaintiff is permitted to plead alternative theories of recovery, *see* Fed. R. Civ. P. 8(d)(2), he may not allege inconsistent facts in support of a single claim.  *See SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 617 (E.D. Va. 2005).  But by incorporating these allegations by reference in his tortious interference and civil conspiracy claims, *see* Am. Compl. ¶¶ 317, 383, that is precisely what Plaintiff has done, and these claims can be dismissed for that reason alone.  *See SecureInfo Corp.*, 387 F. Supp. 2d at 617 (dismissing conspiracy claim that incorporated by reference prior allegations that the employee-defendants were acting within the scope of their employment).

for his own "personal interests" were sufficient to plead that the employee was acting outside the scope of his employment,[14] Plaintiff expressly alleges throughout his Amended Complaint that General Jumper and the Leidos Board Members did *not* act out of "personal interests." Rather, Plaintiff repeatedly alleges that General Jumper and the Leidos Board Members acted to terminate his employment because of their fear of the impact that Plaintiff's Parkinson's disease would have *on Leidos*—*e.g.*, that it would "prevent [Plaintiff] from *performing his job responsibilities*," "prevent him from *continuing effectively in his position*," "impact" and "impair his *ability to perform*," and require "*Leidos* . . . to *cope with* [and] *accommodate* [Plaintiff's] disability as it progressed." *See* Am. Compl. ¶ 125 (emphases added); *see also, e.g., id.* ¶¶ 2, 125, 160, 177, 203-204, 243, 264, 343, 432.

*Haigh v. Matsushita Electric Corporation of America* is particularly instructive here. 676 F. Supp. 1332 (E.D. Va. 1987). The plaintiff in *Haigh* alleged that officers of his former employer "set into motion a scheme to get rid of [him]" for "a variety of [unlawful] reasons," including discrimination on the basis of his age. *Id.* at 1349. In addition to a wrongful termination claim against his employer based on alleged age discrimination, the plaintiff brought

---

[14] Notably, in *Gina Chin* the Virginia Supreme Court "*expressly reject[ed]*" any interpretation of its prior decisions as "requir[ing] that the specific act which caused the injury be performed by the employee with an intent to benefit the employer" to bring the act within the scope of employment. 537 S.E.2d at 577 (emphasis added). Rather, the Court held that the "motive of the employee in committing the act complained of is *not determinative* of whether it took place within the scope of the employment relationship." *Id.* at 578 (emphasis added); *see also Putz v. United States*, No. 305-00032, 2006 WL 840320, at *3 n.11 (W.D. Va. Mar. 29, 2006) (noting that *Gina Chin* "clarified that even if an employee does not act with an intent to further the employer's interest," he must "be regarded as acting within the scope of employment if 'the service itself, in which the tortious act was done, was within the ordinary course of such business'") (quoting *Gina Chin*, 537 S.E.2d at 578). Though the *Gina Chin* Court also noted that the employee's motive was not entirely "irrelevant" to this issue, it nonetheless reaffirmed that where there has been no deviation (or only a "slight" deviation) from the employer's ordinary course of business, it is appropriate to decide the scope-of-employment question as a matter of law. 537 S.E.2d at 578.

a claim for tortious interference against the individual officers. *Id.* at 1340, 1349. The Court dismissed the latter claim under Rule 12(b)(6) because the Plaintiff had not alleged that these officers acted outside the scope of their employment. *Id.* at 1349. As the Court explained, although the defendants' "scheme may have been illegal, it was nonetheless, according to [the allegations in the plaintiff's complaint], devised by [company] officials to *further [the company's] interests*," including hiring "younger sales personnel" and "reduc[ing] liability for pension benefits." *Id.* (emphasis added).

Similarly, having "alleged throughout his Complaint" that General Jumper and the Leidos Board Members acted to terminate his employment because they feared the impact that Plaintiff's Parkinson's disease could have *on Leidos*,[15] Plaintiff cannot contend that they were acting outside the scope of their corporate duties for purposes of his tortious interference and

---

[15] Plaintiff also alleges that General Jumper was motivated to terminate Plaintiff's employment for additional reasons purportedly unrelated to his Parkinson's disease. *See* Am. Compl. ¶ 343 (alleging that General Jumper terminated Plaintiff's employment to "cover up for his own shortcomings and failings as the CEO"). As a matter of law, these allegations cannot save Plaintiff's tortious interference claim in light of his repeated allegations that General Jumper *also* acted with the intent to further Leidos' interests. *See Wells v. United States*, No. 7-177, 2006 WL 2987948, at *3 (E.D. Va. Oct. 17, 2006) ("Under Virginia law, the fact that an employee's act benefits *both himself and his employer* does *not* take that act outside the employee's scope of employment, *even where the employee's 'predominant motive' is to benefit himself*.") (quoting *Bryant v. Bare*, 192 Va. 238, 244–45 (1951)) (emphases added); *accord* Restatement (Second) of Agency § 236 cmt. b (1958). Plaintiff's allegations also distinguish this case from decisions by some courts in Virginia—even assuming they were correctly decided—that have permitted tortious interference claims to proceed to discovery based on allegations that the defendants acted *solely* out of a "personal" motive or interest. *See, e.g.*, *Storey v. Patient First Corp.*, 207 F. Supp. 2d 431, 449 (E.D. Va. 2002) (plaintiff alleged that the employee-defendants "were motivated by an intent to protect themselves from liability" for alleged corporate misconduct); *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 266 (W.D. Va. 2001) (plaintiff alleged that the employee-defendant was motivated by "'personal dislike' for [the plaintiff]").

civil conspiracy claims.[16]  *Id.*  Moreover, a contrary conclusion—*i.e.*, that the Board Members were *necessarily* acting outside the scope of their corporate duties if they terminated Plaintiff out of discriminatory animus—would give rise to tortious interference and/or conspiracy claims against individual employees in *every* discrimination case, *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 353 (4th Cir. 2013), and would essentially make it impossible to ever hold an *employer* liable for the allegedly discriminatory acts of its employees.  *See Stephens v. Kay Mgmt. Co.*, 907 F. Supp. 169, 174 (E.D. Va. 1995) (noting that the ADA (and similar statutes) define covered "employer[s]" as including the "agent[s]" of such entities to reflect "the common law [principle that] an employer may be liable for the intentional torts of its employee if they are committed *within the scope of employment*") (emphasis added).  That is not the law.

In sum, because Plaintiff's own allegations establish that General Jumper and the Leidos Board Members do not qualify as necessary "third parties" for Plaintiff's tortious interference and conspiracy claims, these claims fail as a matter of law and must be dismissed.[17]

---

[16]  Nor may Plaintiff rely on the so-called "personal stake exception" to the intra-corporate conspiracy doctrine to avoid dismissal of his civil conspiracy claim.  Not only have Virginia courts declined to recognize that exception, *see Vollette v. Watson*, 937 F. Supp. 2d 706, 727 n.19 (E.D. Va. 2013), the Fourth Circuit has refused to extend it beyond cases where the employee-defendant had an independent and personal "financial stake" in the object of the conspiracy.  *See, e.g., Locus v. Fayetteville State Univ.*, 870 F.2d 655, at *2 n.1 (4th Cir. Mar. 8, 1989); *accord Oksanen v. Page Mem'l Hosp.*, 945 F.2d 696, 705 (4th Cir. 1991).  Plaintiff has alleged nothing of the sort here.

[17]  Although courts in Virginia have expressed a general "preference" for "resolving scope of employment questions at trial" or through an evidentiary hearing, *see Williams v. Autozone Stores, Inc.*, No. 09-255, 2009 WL 3837281, at *3 (E.D. Va. Nov. 13, 2009), they have not hesitated to dismiss tortious interference and conspiracy claims at the pleading stage where the Plaintiff's well-pled factual allegations, if true, would establish that the defendant-employees were acting within the scope of their employment.  *See Haigh*, 676 F. Supp. at 1349; *see also, e.g., Calkins*, 2007 WL 2301626, at *2; *Hiers v. Cave Hill Corp.*, No. 99-117788, 2000 WL 145359, at *4 (Va. Cir. Ct. 2000).

**B.      Plaintiff's Claims Are Precluded By The Virginia Human Rights Act**

These common law claims also fail because they are precluded by the Virginia Human Rights Act ("VHRA"), which provides that "[c]auses of action *based upon* the public policies *reflected* in [the VHRA] shall be *exclusively limited* to those actions . . . afforded by applicable federal or state civil rights statutes."  Va. Code. § 2.2-3903(D) (emphases added).  As both this Court and the Virginia Supreme Court have recognized, this "exclusivity" provision "prohibits . . . common law cause[s] of action" based on unlawful discrimination, including claims for wrongful termination.  *Blankenship v. City of Portsmouth*, 372 F. Supp. 2d 496, 501 (E.D. Va. 2005) (citing *Doss v. Jamco*, 492 S.E. 2d 441, 447 (Va. 1997)); *see also McCarthy v. Texas Instruments, Inc.*, 999 F. Supp. 823, 830 (E.D. Va. 1998) (noting that the VHRA's exclusivity provision was "enacted in direct response to [the] trend" of "plead[ing] a common law wrongful termination claim along with federal" discrimination claims, and that "the General Assembly's intent [was] to have . . . federal, state, and local statutory schemes provide the sole remedies for employment discrimination actions").[18]

Here, Plaintiff's tortious interference and civil conspiracy claims—which are essentially claims for wrongful termination based on unlawful disability discrimination against General Jumper and the Leidos Board Members in their individual capacities—are, on their face, common law "[c]auses of action based upon" a "public polic[y] reflected in [the VHRA]."  Va. Code. § 2.2-3903(D); *see* Am. Compl. ¶ 343 (alleging that General Jumper tortiously interfered

---

[18]   The VHRA's exclusivity provision was enacted by the Virginia legislature in 1995 to overrule the Virginia Supreme Court's decision in *Lockhart v. Commonwealth Educ. Sys. Corp.*, 439 S.E.2d 328 (Va. 1994), which had held that the exception to the employment at-will doctrine recognized in *Bowman v. State Bank of Keysville*, 331 S.E.2d 797 (Va. 1985) extended to common law claims based on violations of policies reflected in the VHRA.  *See McCarthy*, 999 F. Supp. at 830.

with Plaintiff's at-will employment at Leidos by "terminating [him] because of [General] Jumper's . . . fears related to [Plaintiff's] diagnos[i]s with Parkinson's disease"); *Id.* ¶ 384 (alleging that the Leidos Board Members "conspired . . . to terminate [Plaintiff] . . . based on [Plaintiff's] disability or perceived disability of Parkinson['s] [d]isease"); *see also* Va. Code. § 2.2-3900(B)(1) ("It is the policy of the Commonwealth to . . . [s]afeguard all individuals . . . from unlawful discrimination because of . . . disability . . . in employment . . . ."). Accordingly, the VHRA's exclusivity provision (i) precludes these common law claims and (ii) authorizes Plaintiff to pursue only those "[c]auses of action" "afforded by applicable federal or state civil rights statutes," including Plaintiff's claim for wrongful termination under the ADA. *See* Va. Code. § 2.2-3903(D).[19]

## IV. Plaintiff Has Failed To State A Claim For Tortious Interference With "Prospective Business Expectancies" (Count VII)

Plaintiff's claim against Leidos and General Jumper for tortious interference with business expectancies is based on two purported acts of interference: (1) General Jumper's allegedly defamatory statement in the *Washington Business Journal*; and (2) the third-party subpoenas issued by Defendants during the course of discovery. *See* Am. Compl. ¶¶ 353-54, 369-71. This claim fails for multiple independent reasons under both theories.

---

[19] Indeed, permitting plaintiffs to pursue individual liability against supervisors, officers, or directors through such common law claims would circumvent the limitations and requirements of the ADA and the Virginians with Disabilities Act ("VDA")—which, under the VHRA, are the "exclusiv[e]" causes of action for discrimination on the basis of disability—as both statutes, by design, do not provide for individual liability. *See Jones v. Sternheimer*, 387 F. App'x 366, 368 (4th Cir. July 6, 2010) (ADA); Va. Code § 51.5-41(A) (VDA); *see also Stephens*, 907 F. Supp. at 174 (explaining that Congress incorporated respondeat superior liability into the ADA to "require[] employers to answer for discriminatory acts of [their] employees, and . . . deter[] illegal discrimination at all levels of the employment hierarchy").

In order to state a claim for tortious interference with business expectancies under Virginia law, a plaintiff must plead that: (1) a "business . . . expectancy, with a probability of economic benefit" existed; (2) the defendant knew about the expectancy; (3) there was a "reasonabl[e] certain[ty] absent intentional misconduct, the claimant would have . . . realized the expectancy"; (4) the interference damaged the plaintiff; and (5) the defendant used "improper means" to interfere with the prospective economic advantage. *Shirvinski v. U.S. Coast Guard*, No. 09-896, 2010 WL 4279254, at *6 (E.D. Va. Oct. 25, 2010), *aff'd*, 673 F.3d 308 (4th Cir. 2012). Courts in this district also have recognized two additional "de facto" prima facie elements of this tort—*i.e.*, (6) a competitive relationship between the party interfered with (the plaintiff) and the alleged interferer (the defendant); and (7) contact between the defendant and the source of the plaintiff's business expectancy. *17th St. Assocs., LLP v. Markel Int'l Ins. Co. Ltd.*, 373 F. Supp. 2d 584, 600–01 (E.D. Va. 2005); *Shirvinski*, 2010 WL 4279254 at *6.

Plaintiff has failed to state a claim for tortious interference with business expectancies. *First*, he fails to allege sufficient facts to plead the first and third elements of this tort—*i.e.*, (i) the existence of "a *specific* prospective economic advantage or business expectancy . . . with a *specific* party" that was allegedly interfered with, *Gov't Empls. Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 705–06 (E.D. Va. 2004) (emphases added); and (ii) that "it was *reasonably certain* that absent [the alleged interference], [Plaintiff] would have . . . realized the expectancy." *Shirvinski*, 2010 WL 4279254, at *6 (emphasis added); *see also Taylor v. CNA Corp.*, 782 F. Supp. 2d 182, 204 (E.D. Va. 2010) (the "mere hope or possibility of future" employment is insufficient). In his Amended Complaint, Plaintiff conclusorily asserts that the "disseminat[ion]" of General Jumper's statement to the *Washington Business Journal* has "imped[ed] [Plaintiff's]

ability to find gainful employment";[20] and similarly alleges that the third-party subpoenas have

"effectively . . . halt[ed] . . . communications" with "potential employers and headhunters,"

thereby impeding Plaintiff's "*chance* to become reemployed."[21]  *See* Am. Compl. ¶¶ 362–64, 374

(emphasis added).  These "blanket allegation[s] about an undefined set of expectancies" are

entirely insufficient to state a claim.  *See, e.g.*, *GTSI Corp. v. Wildflower Int'l, Inc.*, No. 09-123,

2009 WL 2160451, at \*8–9 (E.D. Va. July 17, 2009); *Gov't Empls.*, 330 F. Supp. 2d at 705–06.

*Second*, Plaintiff's defamation-as-tortious-interference theory also fails because Plaintiff

has not alleged facts sufficient to establish the seventh element of this tort—*i.e.*, "any particular

instances of direct or even indirect contact by Defendants with" any (unidentified) prospective

employers.  *Cominelli v. Rector & Visitors of the Univ. of Va.*, 589 F. Supp. 2d 706, 716–717

(W.D. Va. 2008); *see also Shirvinski*, 2010 WL 4279254, at \*6; *17th St. Associates*, 373 F. Supp.

2d at 600–01.  At most, Plaintiff alleges that General Jumper was aware that (unidentified)

members of the government contracting and defense community generally read the *Washington

Business Journal*, and thus *might* see General Jumper's allegedly defamatory statement.  *See*

Am. Compl. ¶¶ 362–65.  But as a matter of law, "publication of information with knowledge that

---

[20]  Plaintiff purports to allege that during an interview with one potential employer, the interviewer "asked repeatedly about the circumstances of [Plaintiff's] departure from Leidos"—which Plaintiff believes "*suggest[s]*" that the *Washington Business Journal* article "impacted the interviewer's opinion of [Plaintiff]"—and on that basis asserts that but for the article, "it was *more likely than not* that [Plaintiff] would have been hired by" this employer. Am. Compl. ¶ 365 (emphases added).  These allegations fail entirely to plausibly plead the requisite "reasonably certainty" that this purported expectancy would have been realized but for the alleged interference.  *See Shirvinski*, 2010 WL 4279254, at \*7.  Indeed, Plaintiff's other allegations belie this assertion—in the same paragraph, Plaintiff admits that he was only one of several candidates interviewed for the position.  Am. Compl. ¶ 365.

[21]  Although Plaintiff identifies the entities who received subpoenas in his Amended Complaint, he does not identify any *specific* opportunity with any of these entities that was interfered with—presumably because his applications were rejected before the subpoenas were issued—and instead only generally alleges that the subpoenas have harmed his "ability to obtain gainful employment."  Am. Compl. ¶¶ 369–70.  This is insufficient.

its contents *might be shared with third parties* is not the form of indirect contact required to make a prima facie case for intentional interference." *Shirvinski*, 2010 WL 4279254, at *6 (emphasis added); *see also Cominelli*, 589 F. Supp. 2d at 716–717 (allegations that defendant made allegedly defamatory statement with awareness of its likely effect on the plaintiff's pending job offer with a specifically identified prospective employer was insufficient).

*Third*, Plaintiff's subpoenas-as-tortious-interference theory also fails because the subpoenas do not constitute "improper means" of interference (the fifth element). Improper means are those "that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules." *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc.*, 367 F.3d 212, 228 (4th Cir. 2004). Here, Plaintiff alleges that the subpoenas qualified as "improper means" because they constituted unlawful retaliation.[22] *See* Am. Compl. ¶¶ 353, 371–72. However, because Plaintiff has failed to state a retaliation claim based on the subpoenas (*see supra* at 13-16), his duplicative tortious interference claim must be dismissed as well.[23] *See, e.g., Skillstorm, Inc. v. Elec. Data Sys., LLC*, 666 F. Supp. 2d 610, 616 (E.D. Va. 2009) (dismissing tortious interference claim where the plaintiff failed to state a claim for the underlying tort that allegedly constituted the "improper means" of interference).

---

[22] Plaintiff also alleges, without elaboration, that issuing these subpoenas constituted an "obstruction[] of justice" in violation of Virginia criminal law. Am. Compl. ¶ 353 (citing Va. Code § 18.2-460(B)). This utterly baseless assertion is nothing more than a legal conclusion devoid of any factual support, and must be disregarded. *Nemet*, 591 F.3d at 255.

[23] As previously discussed, the *Noerr-Pennington* doctrine also precludes liability on the basis of the subpoenas. *See supra* at 15–16; *see also IGEN*, 335 F.3d at 310 (acknowledging that the *Noerr-Pennington* doctrine applies to state law claims for tortious interference with business expectancies); *Titan America, LLC v. Riverton Inv. Corp.*, 569 S.E.2d 57, 62 (Va. 2002) (same).

29

## CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Court grant its Motion for Partial Dismissal of Plaintiff's Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated:  April 6, 2015

Respectfully submitted,

_____/s/ Jason C. Schwartz_____

Jason C. Schwartz, Va. Bar No. 43635
Jason J. Mendro, admitted *pro hac vice*
Martin A. Hewett, admitted *pro hac vice*
Greta B. Williams, admitted *pro hac vice*
Andrea R. Lucas, Va. Bar No. 82357
Michael R. Huston, admitted *pro hac vice*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036
jschwartz@gibsondunn.com
jmendro@gibsondunn.com
mhewett@gibsondunn.com
gbwilliams@gibsondunn.com
alucas@gibsondunn.com
mhuston@gibsondunn.com
Telephone:     202.955.8500
Facsimile:     202.467.0539

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of April, 2015, I electronically filed the foregoing with the Clerk of the Court for the Eastern District of Virginia using the CM/ECF system, which sent a notification of such filing (NEF) to the following:

Elaine Charlson Bredehoft
Carla Brown
CHARLSON BREDEHOFT COHEN & BROWN, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, VA 20190
ebredehoft@charlsonbredehoft.com
cbrown@charlsonbredehoft.com
*Counsel for Plaintiff Joseph W. Craver, III*

                                                              /s/
                                        Jason C. Schwartz, Va. Bar No. 43635
                                        GIBSON, DUNN & CRUTCHER LLP
                                        1050 Connecticut Avenue, N.W.
                                        Washington, DC 20036
                                        JSchwartz@gibsondunn.com
                                        Telephone:    202.955.8500
                                        Facsimile:    202.467.0539